(No. 10638.—Rule made absolute.)

THE PEOPLE *ex rel.* The Chicago Bar Association, Relator,
*vs.* WILLIAM L. MARTIN, Respondent.

*Opinion filed June 18, 1919—Rehearing denied October 8, 1919.*

1. DISBARMENT—*diligence to client does not allow attorney to
make a false affidavit.* There is nothing in the duty of diligence
which a lawyer owes to his client which in any way makes it per-
missible for him to practice or attempt to practice a fraud on the
court or to swear to that which is not true.

2. SAME—*when filing false affidavit will be ground for disbar-
ment.* Where an attorney is willing to procure the filing of an af-
fidavit which he knows to be false and in which he attacks the
fairness of a trial judge without cause, such conduct will amount
to subornation of perjury and of itself constitute sufficient ground
for disbarment.

3. SAME—*general charge of reputation for dishonesty may be
considered in connection with specific charges.* While a general
charge of bad reputation for fair dealing and professional honesty
is not, of itself, sufficiently specific to comply with rule 40 of the
Supreme Court so as to form a basis for disbarment, it is compe-
tent to consider the respondent's general reputation for truth and
ethical practices in connection with specific charges against him.

INFORMATION to disbar.

JOHN L. FOGLE, (JOHN E. KEHOE, of counsel,) for
relator.

WILLIAM L. MARTIN, *pro se.*

Mr. JUSTICE STONE delivered the opinion of the court:

Upon leave an information in the name of the People,
on the relation of the Chicago Bar Association, praying
that the name of the respondent, William L. Martin, be
stricken from the roll of attorneys of this court, has been
filed. The respondent filed his answer, and the cause was
referred to the Hon. Charles T. Mason as commissioner.
The relator took its testimony within the time limited by

the order of this court but the respondent failed to take his testimony within such time, whereupon a report was filed by the commissioner. Upon request of the respondent the cause was re-referred to the commissioner. The commissioner having died, a reference of the entire matter was later made to the Hon. Walter W. Ross, who heard the balance of the testimony of respondent and has made his report to this court.

The information contained eleven counts, and one additional count was asked by the relator to be added by way of amendment, but the motion therefor was denied by this court and is now renewed by the relator. The only counts referred to by the relator in its brief are the first, second, third, fourth, eleventh, and the additional count heretofore presented to this court on the motion of the relator to amend the information and which motion was denied.

The commissioner, Walter W. Ross, took the evidence and reported that the charges of misconduct in each of the counts except the eleventh, and the additional count, did not, in his opinion, authorize him to recommend the disbarment of the respondent. As to the eleventh count the commissioner finds that the general reputation of the respondent for truth and veracity in the city of Chicago is bad and that his general reputation for fair dealing and professional honesty as a lawyer is bad. The commissioner suggests and finds that the charges contained in the eleventh count be sustained, unless this court construes rule 40 to prohibit such general charges which fail to make clear and specific charges of misconduct. The respondent offered no proof as to his general reputation, and contends that under rule 40 of the rules of the Supreme Court there shall be filed an information making clear and specific charges, giving the time, place and acts of misconduct with reasonable certainty, and that he ought not to be disbarred under the evidence supporting this count. Exceptions have been filed by the relator.

The testimony was taken in shorthand, except the testimony of the respondent. Commissioner Ross directed the respondent, from time to time, to have the testimony transcribed and file the same with the commissioner. Although frequently promising to do so, respondent failed to do so up to the time of the filing of the commissioner's report. The commissioner reports that he is able to file a transcript of all the testimony presented to him except that which appears on pages 44 to 175, inclusive, of the record, which are missing. Counsel for relator produced to the commissioner a receipt for these pages of the record and notice to respondent to return said testimony, which he has failed to do. The commissioner further reports that he has no knowledge of practically all of the witnesses who testified before commissioner Mason, deceased, and that he has not had the benefit of hearing their testimony.

Commissioner Mason, in his report now on file in this court, found on the first, second, third, fourth, sixth, seventh, ninth and eleventh counts that the respondent was guilty of the unprofessional conduct set out in each of the findings upon which evidence was taken before him, and recommended that the rule be made absolute and the respondent disbarred.

It is contended by the relator that the second commissioner, Ross, was placed in an unusual situation by reason of the fact that he only heard the respondent's evidence and was compelled to get the testimony of the complaining witnesses from the record, only, and that this condition accounts for the variation in the findings and recommendations of the two commissioners. It is urged that the exceptions of the relator to the second report should be sustained and the rule made absolute.

The first count in the information charges, in substance, that Blanche Woodward swore to an affidavit thereafter filed by respondent in the superior court of Cook county in a proceeding for alimony *pendente lite* by her against

Lindsey A. Woodward for separate maintenance, in which affidavit she averred that she owed the sum of $163.64 to Carson, Pirie, Scott & Co. for certain wearing apparel purchased by her; that suit had been begun by said company against her and that she was not the head of a family residing with the same, and that her household goods were subject to the levy of an execution which might be issued in said matter. This affidavit was drawn at the direction and in the office of the respondent. Eleven days later the respondent, before the same notary public, who was a stenographer in the respondent's office, made oath to an affidavit of merits in the defense of the case in the municipal court of Chicago, wherein Blanche Woodward was being sued by Carson, Pirie, Scott & Co. for said item of $163.64. In this affidavit respondent averred that he was the agent and attorney for Blanche Woodward and that he believed that she had a good defense to plaintiff's demand, stating that the goods, the purchase price of which was being sued for, were purchased by and upon the order of Lindsey A. Woodward for his own use and not for the defendant, and that the defendant does not owe the plaintiff the sum of $163.64. This affidavit was filed by respondent in said case within two weeks after the affidavit of Blanche Woodward had been filed by him in the superior court. It is evident that respondent knew that Blanche Woodward had sworn that she owed said sum for the articles. He knew that his affidavit, therefore, was false. Such an affidavit was material in the case in which he filed it. Respondent must be held to have known at the time of making his affidavit that Blanche Woodward had made certain purchases; that she had received property thereunder and was liable to pay for the same. There is nothing in the duty of diligence which a lawyer owes to his client which in any way makes it necessary, under any circumstances, for him to practice or attempt to practice a fraud on the court or to swear to that which is not true, and when an attorney at law is willing

to perjure himself in the interest of his client, it is, doubt-
less, with full knowledge and appreciation of the responsi-
bility resting upon him in so doing.   Upon a review of the
entire record pertaining to the first count, together with the
reports of the commissioners concerning the same, we are
of the opinion that the charges of the first count are sus-
tained, and that the evidence under said count shows the
respondent to have been guilty of unethical and unprofes-
sional conduct tending to bring the profession into disrepute.

The second count charges that the respondent, with Is-
rael E. Berger and others, entered into an arrangement to
prevent the State of Illinois from collecting forfeitures on
two criminal bonds signed by Berger to the People of the
State of Illinois in certain proceedings in the criminal court
of Cook county, by fraudulently conveying, without any
consideration, the property of Berger.   It appears from the
evidence that a bill was filed in the superior court for the
purpose of removing said conveyance as a fraud and of
subjecting the property to an execution on a judgment and
secure a sale of the property.   A sale was ordered.   On the
morning of the sale respondent filed a bill for injunction
against the sale of the property.   Although he had repre-
sented the defendants to this bill, respondent procured the
affidavit of one Fiedelman, represented by respondent, to
the effect that he did not learn the sale was to take place
until five o'clock on the preceding day.   This count further
charges that said affidavit was false and that respondent
knew the same to be false, yet he appeared, filed said affi-
davit and secured the issuance of an injunction on said
sworn bill.   The injunction was set aside and a sale again
ordered and advertised.   On the day of the second sale re-
spondent placed on file in the superior court of Cook county
a second bill for injunction on behalf of another defendant
represented by him, together with an affidavit of said de-
fendant that he did not learn of the sale until four o'clock
on the preceding day.   This bill was filed under another

solicitor's name, but it is charged that it was prepared in the respondent's office, written on respondent's typewriter by his stenographer, and contained a number of interlineations in the handwriting of the respondent. An injunction was secured and later dissolved and the second bill dismissed, and an order was entered to sell the property, and the property was advertised for sale for the third time. It is further charged that the respondent caused a third bill for injunction to be filed against said sale; that this bill was prepared in respondent's office on his typewriter and sworn to by another of the defendants in the creditors' bill; that in the bill appear interlineations in the handwriting of the respondent and entries thereon in his handwriting. It is charged that in this bill the third defendant was caused by respondent to falsely swear that he did not obtain knowledge of said sale until five o'clock the day preceding the sale. The injunction secured thereby was later set aside and the bill dismissed. It is evident from a review of the testimony relating to this count that the conduct of the respondent was unethical and unprofessional and constituted a fraud upon the court. It is inconceivable that respondent could have in good faith directed these affidavits, when, if he was at all diligent in caring for his clients' interests, it is evident that he must have informed all of the defendants of the proceedings in the creditors' bill, as the same had been strongly contested.

The third count charges that in 1910 Thomas Kruzel, and Agnieszka Kruzel were the owners of a small piece of property situated in Chicago on which there were two trust deeds. The first trust deed, for $1000, was held by Alexander E. Glans, and a second trust deed for about $600 was held by Johanna Heiland. When the note for $600 became due the Kruzels went to respondent and turned over to him the sum of $600 with which to pay off said note and trust deed. The money was not turned over by respondent to Johanna Heiland. Shortly after receiving the

$600 respondent caused Israel Berger, who was associated with the respondent, to call upon the Kruzels and request the payment of $450 additional, which sum the Kruzels turned over to Berger. It is charged further that since then payments were made from time to time on the second trust deed until it was eventually paid in full; that instead of securing a release of the same it was caused by Berger to be assigned to Eli Levy in February, 1915. Glans, the owner of the first trust deed, brought foreclosure proceedings, and respondent was retained by the Kruzels as their attorney in said proceeding and was paid $20 on account of fees. It is further charged that respondent failed to file an appearance or answer in the proceedings on behalf of the Kruzels, and although he appeared before the master in chancery he permitted Levy to prove the second trust deed and to procure a decree to be entered on the same requiring payment of $862.55. Thereafter, through the investigation of another lawyer, this situation was discovered. A report of the matter was made to the court and a further reference to the master was had and further evidence was taken. The master found that the respondent had been retained to represent the Kruzels; that he had failed to file an appearance or answer and permitted the $600 note and trust deed to be introduced in evidence without objection on his part and without disclosing to the master the payment to him of the sum of $600 or the further sum of $450 paid to Berger, which sums the master found were paid for the purpose of discharging the incumbrance and other liens. The master further found respondent permitted a decree to be entered finding that the second trust deed was a valid lien. We have examined the record touching this count, and while these averments are denied by respondent and Berger, and while it is urged by respondent that Berger was responsible for the fraud upon the Kruzels and not himself, yet it is evident from the close association of these men that respondent must have been con-

versant with what Berger was doing in the matter. This is further shown by the fact that the respondent permitted proof to be made against his clients and a decree of foreclosure against them on the second trust deed when he well knew that the money had been paid to him for the purpose of paying off said trust deed. It is evident from the entire record regarding this count that had it not been for the interposition of other counsel substantial rights of the Kruzels would have been forfeited through the acts of respondent and Berger. We are of the opinion that the record substantiates the third count.

The fourth count charges that in a certain cause entitled Wakins vs. Defrier the respondent was retained as attorney of record for Josephine Defrier. After securing several postponements and delays in the trial of the cause and after it was announced by the court that further delay would not be allowed, the respondent procured Josephine Defrier to make an affidavit for a change of venue, in which it was stated that petitioner believed she could not receive a fair trial of said cause before any of the judges named in the petition because each of the said judges was prejudiced against her, naming nine judges sitting in the circuit court of Cook county. The count further avers that none of the judges mentioned in the affidavit knew anything concerning the merits of said cause or had any knowledge or information or acquaintance with either the plaintiff or defendant in the cause and that the affidavit when drawn up by respondent was known by him to be false. While this averment is denied by the respondent,— and in this denial he is corroborated by his associate, Berger,—yet it is evident from an examination of the entire record that the respondent knew that the affidavit was false and that he procured the filing of the same to delay the hearing of the cause. Such action on behalf of the respondent was not only dishonest but grossly unprofessional, and constituted unethical conduct toward the honor-

able judges in the circuit court named in the petition for change of venue. When an attorney is willing to procure the filing of an affidavit which he knows to be false and in which he attacks the fairness of a trial judge without ground, such conduct may amount to subornation of perjury and of itself constitute sufficient ground for disbarment.

The eleventh count of the information charges the respondent to be a man whose general reputation for truth, veracity, fair dealing and professional honesty as a lawyer in the city of Chicago is bad and that his general reputation as a practitioner among the judges on the bench and the members of the bar in Cook county is bad. The respondent contends such charges should not be considered for the reason that they do not comply with rule 40, requiring that charges be specific. While such a charge is not of itself sufficiently specific to comply with said rule so as to form a basis for disbarment, yet, as one of the qualifications of an attorney at law is that he be of good moral character, it is competent to consider his general reputation for truth, honesty, fair dealing and ethical practices in connection with specific charges filed against him.

Exceptions filed by the relator to the second commissioner's report will be sustained as to the first, second, third and fourth counts and overruled to the balance of said counts. Since the rule must be made absolute it will profit nothing to discuss the counts not herein found sustained. As to the first, second, third and fourth counts, we are of the opinion that the charges therein are sustained by the evidence.

The rule will therefore be made absolute and the name of the respondent stricken from the roll of attorneys.

*Rule made absolute.*

Mr. JUSTICE CARTER took no part in this decision.