**ODELL v. BAUSCH & LOMB OPTICAL CO. et al.**

**No. 6112.**

Circuit Court of Appeals, Seventh Circuit.
July 7, 1937.

Rehearing Denied Aug. 6, 1937.

———◆———

Benjamin F. J. Odell, of Chicago, Ill., in pro. per.

John D. Black and George B. Christensen, both of Chicago, Ill., for appellees.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

This appeal is from a decree in contempt proceedings ordering appellant to pay for the benefit of appellees, fines aggregating $15,000, for violations of three injunctional orders theretofore entered. The decree also ordered that the costs of the contempt proceedings be taxed against appellant and two other defendants against whom additional fines were assessed. Appellant secured an order of severance upon a showing that the other two were not

360

taking any appeal, and therefore prosecutes this appeal alone.

Appellant is an attorney who was named a party defendant in a bill of contempt against one Roy Wahlgren and others. The gravamen of the action lay in Wahlgren's breach of certain restrictive covenants in a contract which provided that upon termination of his employment by appellees he should refrain from engaging in a certain business for a certain period within a certain territory. The others, including appellant, were named in the bill of complaint because of the assistance rendered by them to Wahlgren in the violation of the restrictive covenants. Appellees are an optical goods manufacturing company and its subsidiary by whom Wahlgren had been employed for a number of years under a series of contracts. The particular clause of the contract, the breach of which gave rise to the litigation here involved, is set out in the margin.[1] He contended that the restrictive covenants of the contract were unenforcible, hence upon termination of his employment he immediately started in, with the assistance of appellant, to organize a series of corporations to engage in the business he had covenanted not to enter for five years, and persuaded persons in appellees' employ to leave them and enter into the employ of his corporations. Appellees thereupon prayed an injunction to prevent his continuation of these activities, and named all those parties who were thought to be participating in them. A temporary restraining order was issued April 3, 1931, followed by a preliminary injunction May 22, 1931, and a permanent injunction March 22, 1933, the latter being the final decree in the main cause. This court, on January 23, 1934, affirmed this final decree which permanently enjoined Wahlgren from engaging in the business involved, for the time and in the territory covered by the contract, and from receiving any payment in any form from any of the Wahlgren corporations. The decree also enjoined the other defendants from inducing or attempting to induce appellees' employees to leave their employment; from conspiring to injure appellees'

business by circulating false statements among their customers; and from entering or remaining after May 1, 1933, in the employ of any business organization with which Wahlgren was in any way connected, for the limited time and area. See Wahlgren et al. v. Bausch & Lomb Optical Co. et al. (C.C.A.) 68 F.(2d) 660, certiorari denied 292 U.S. 639, 54 S.Ct. 774, 78 L.Ed. 1491.

Throughout the proceedings, appellant, as attorney, represented Wahlgren and certain of the other defendants. Upon recommendation of the master to whom the matter was referred for hearing, the bill was dismissed as to him for the reason stated by the master in his report in the main case, that there was no evidence that he conspired with the other defendants or took any part in the enticement of appellees' employees or solicitation of their customers, and that as attorney for Wahlgren, he had advised that the restrictive covenants of the contract were unenforcible, and had acted accordingly. Although the final decree ordering the permanent injunction did dismiss appellant by name from the proceedings, it granted relief to appellees, "against said defendants, their agents, servants, attorneys and counsellors, and anyone acting by, or through, or for them, or any of them, and all to whom notice of this injunction shall come. * * *" Also incorporated in the final decree was a provision reserving jurisdiction of the cause and of all the parties thereto, for the purpose of entering any further orders which might be necessary with respect to the original bill of complaint or any amended or supplemental bills that might be entered, or with respect to any proceedings for contempt or accounting, or for reference to a master for any purpose that might be desirable. On the day this final decree was entered, March 23, 1933, appellees filed a supplemental bill again naming appellant, and during the course of proceedings in court on that day, the court ordered that the record show that his appearance and that of another defendant not here involved, were entered in open court. There was no objection to this procedure.

[1] "(3) That in case of the termination of his employment by the Riggs Optical Company, the said Wahlgren shall not, and hereby covenants and agrees that he will not, within five (5) years from the date of the termination of such employment, enter the employ of or become or be interested in any corporation, partnership, concern or business engaged in the manufacture or sale of optical instruments or apparatus anywhere within the United States of America west of a line drawn due North and South through the City of Detroit, Michigan."

Following the entry of the order of this court affirming the decree of the District Court, the case was again referred to a master for hearing as to alleged violations of the three injunctional orders, and leave was given appellees to file an additional petition or charges of contempts to which defendants were ruled to file answers. Such additional petition was filed February 7, 1934, naming Odell along with the other defendants, and charging them with remaining in the employ of the Wahlgren companies after May 1, 1933, and helping continue the business of those companies, and charging appellant and another attorney with having willfully and knowingly aided the various defendants in evading and violating the orders of the court, and knowingly obstructed the courts of justice and presented defenses on the facts of the case known by them or which should have been known to be false and fraudulent. For such violations appellees prayed that all defendants be punished by fine or imprisonment. To this petition appellant filed answer denying all the charges.

In accordance with the order of reference, the master heard testimony on the violations by all defendants, including appellant, of the three injunctional orders. He then reported, recommending the imposition of fines aggregating $257,977 against Wahlgren, appellant, and the other attorney, jointly and severally, such fines being based on the loss of profits and the costs and attorneys' fees necessitated by the perjurious defense of the main case. He also recommended disbarment of appellant and the other attorney because of their conduct in the proceedings. The District Court refused to follow the master's recommendation as to disbarment, on the authority of Ex parte Robinson, 19 Wall. 505, 22 L.Ed. 205, which held that disbarment could not be ordered as a punishment for contempt. The court also reduced the amount of fines by eliminating the item of loss of profits, ordering appellant to pay for the benefit of appellees, $15,000, $13,000 of which was to cover his share of attorneys' fees, and $2,000 for investigating expenses incurred by appellees. It is from this decree that appellant prosecutes this appeal.

■■ Appellant assigns as error the holding of the court that he was not entitled to jury trial and that the statute of limitations did not bar the proceeding against him. For his right to jury trial and to the application of a one-year statute of limitations, he relies upon the provisions of the Clayton Act, §§ 22, 25, 28 U.S.C.A. §§ 387, 390. The right to jury trial, however, is only "upon demand of the accused," and where, as here, he acquiesced in the order of reference, and presented testimony to the master, and did not make his demand for jury trial until six weeks after the master had filed his report, there was no error in the ruling of the court that he had waived his right to such trial. Moreover, this was clearly a proceeding in civil contempt, as indicated by the character of the punishment meted out. See Gompers v. Buck's Stove & Range Co., 221 U.S. 418, at page 443, 31 S.Ct. 492, 55 L. Ed. 797, 34 L.R.A.(N.S.) 874. In such a proceeding we do not understand that the accused is entitled to a jury trial.

■ The same reasoning applies in regard to the applicability of the one-year limitation period. We think that the provisions of the Clayton Act referred to were not intended to limit the right of the court to punish in civil contempt proceedings offenders who violated their orders to the injury of innocent parties for whose benefit they issued the orders. Instead, we are convinced that it was within the power of the court to order punishment for such contempts whenever the proof was brought to its attention. In this case, the need for such interpretation is particularly clear, since it was not shown until the hearing upon the second reference that appellant had procured to be filed false affidavits and had actively participated in the acts enjoined. We have found no cases, and appellant has called our attention to none in support of the proposition that the statute relied upon is a bar to the power of the court to punish by proceedings in civil contempt for the benefit of the injured party whenever it learns of the acts which constitute such contempts. Furthermore, while it is true that many of the acts complained of were done more than a year before appellant was brought back into the proceedings as a named party by the supplemental bill, and the filing of his appearance in open court, there were some acts proved which were done after that date, and as to those there can be no question of the power of the court to punish. We refer particularly to several letters written by appellant to various defendants encouraging them in effect to continue their violations of the injunctive orders. In fact, even after this

court had rendered its decision, he advised one defendant that "the business could go along just as it had been." In view of all these facts, we agree with the District Court that the proceeding was not barred by the Clayton Act.

■ Appellant also contends that the decree is erroneous because it holds him guilty of alleged violations of injunctions on matters not enjoined; of acts transpiring prior to the date of the injunctions; of unproven, disproven and abandoned charges and acts of which he was not even charged; of conspiracy in contempt when he had already been dismissed in the conspiracy action; and liable for damages, investigation expenses and attorneys' fees not incurred through his fault.

Wahlgren's breach of his contract was made very clear by the hearing in the main cause, hence the permanent injunction following up the temporary orders previously granted in an attempt to preserve appellees' rights pending the investigation. However, appellant's participation in that breach was not clear at that time, hence the master recommended his dismissal from that cause. The decree, however, ran to the named defendants *and* their agents, attorneys, etc. Having been named a party in the first bill, appellant was well aware of his duty to refrain from doing acts enjoined in the preliminary restraining orders. That his acts were not discovered until after the master filed his report on the main cause including therein a recommendation that he be dismissed does not relieve him of liability. We are convinced that the court retained sufficient jurisdiction over him to impose the punishment here complained of in spite of such dismissal.

■ We have not considered it necessary to set out all the specific acts found by the master in his report on the contempt proceedings to have been done by appellant after the issuance of the various orders. It is sufficient to say that that report, and the transcript of testimony and exhibits upon which it was based, are replete with evidence that appellant active-

ly participated in keeping Wahlgren in business in violation of the orders after those orders were issued, and in working out the details of the plan by which the restrictive covenants of the contract were circumvented; that he orally and by letters encouraged lesser members of the group whom he represented in the proceedings and who looked to him for legal advice, to disregard the orders of the court and continue in the business enjoined; and that he, having done all the legal work necessary to incorporate the various companies used to conceal Wahlgren's part in the business, and having actively participated in negotiations for financing those companies, caused to be signed and filed affidavits denying that Wahlgren had procured their incorporation or that he had any interest in them. "There is nothing in the duty of diligence which a lawyer owes to his client which in any way makes it necessary, under any circumstances, for him to practice, or attempt to practice, a fraud on the court or to swear to that which is not true; and, when an attorney at law is willing to perjure himself in the interest of his client, it is doubtless, with full knowledge and appreciation of the responsibility resting upon him in so doing." People v. Martin, 288 Ill. 615, 124 N.E. 340, 342, 14 A.L.R. 854. No one was in a better position than appellant to know the utter falsity of such affidavits. That all of this activity on his part imposed upon appellees a vast amount of expense for investigation and litigation cannot be doubted, and that the court may order reimbursement for their benefit from one who knowingly and willfully caused such expense also cannot be doubted. His own personal conviction of the unenforcibility of the contract involved is no defense for his flouting the orders of the court while that question was being determined.

We find no error in the decree of the District Court finding appellant guilty of contempts of its orders and imposing fines upon him for the benefit of appellees, and the decree is accordingly,

Affirmed.