## CONVERSE et al. v. HIGHWAY CONST. CO. OF OHIO, Inc.

### No. 7935.

Circuit Court of Appeals, Sixth Circuit.

Nov. 8, 1939.

---

W. H. Thomas, of Cleveland, Ohio (Hartshorn, Thomas & Abele, Martin A. McCormack, and Arnold M. Edelman, all of Cleveland, Ohio, on the brief), for appellants.

W. D. Cole, of Cleveland, Ohio (Boyd, Brooks & Wickham, Fackler & Dye, and W. H. Boyd, all of Cleveland, Ohio, on the brief), for appellee.

. Before HICKS, HAMILTON, and ARANT, Circuit Judges.

HAMILTON, Circuit Judge.

Debtor-appellee, on May 11, 1936, filed its petition pursuant to the provisions of section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, which on the same day was approved and it was continued in possession of its property, with authority to operate its business with all of the powers of a trustee appointed pursuant to the provisions of the Act.

The court, by an ex parte order, enjoined and restrained all persons from interfering with the property, assets or effects in the possession of or owned by the debtor and from interfering with it in the conduct of its business "or to interfere in any manner with the exclusive jurisdiction of this Court over the debtor and its property."

The case was referred generally to a Special Master who, on September 19, 1936. issued an order requiring appellants, Frank P. Converse, Bernard Hagesfeld, R. H. Phillips and Don Scott, to appear before him and show cause why they should not be punished for contempt for disregarding the orders of the court.

Appellants responded and, after a full hearing, the Master filed his report finding each of them had "wilfully and without right, unlawfully interfered with the operation of the debtor's business contrary to and in violation of the court's injunctive order" theretofore issued. He recommended that they purge themselves by paying to the appellee the cost of the contempt proceedings in the amount of $1,145.18.

On exceptions, the court confirmed the report of the Master in all essential particulars except it decreed that appellee had been damaged in the sum of $1,145.18 by appellants' conduct and accordingly awarded a judgment against them jointly and severally from which they appealed.

The facts that the appellants were not parties to the original action, nor served with notice of the application made by the debtor for the injunction, nor served by the officers of the court with a copy of the injunction are immaterial.

Under Section 77B, sub. k, 11 U.S.C.A. § 207, sub. k, an order approving the filing of the petition "shall be taken to be the date of adjudication, and such order shall have the same consequences and effect as an order of adjudication" and under Section 77B, sub. o, 11 U.S.C.A. § 207, sub. o, in proceedings under this Section and consistent with its provisions "the jurisdiction and powers of the court, the duties of the debtor and the rights and liabilities of creditors, and of all persons with respect to the debtor and its property, shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the debtor's petition or answer was approved."

It follows from these provisions that the rule is applicable that the filing of a petition under section 77B, when approved by the court, is a caveat to all the world that it is in effect an attachment and injunction and that the title to the bankrupt's property has become vested in its trustee with actual or constructive possession in the custody of the bankruptcy court. Mueller v. Nugent, 184 U.S. 1, 14, 22 S.Ct. 269, 46 L.Ed. 405; Clay v. Waters, 8 Cir., 178 F. 385, 21 Ann.Cas. 897; In re Mitchell, 2 Cir., 278 F. 707.

The order of injunction in question was not only in personam but also oper-

ated in rem to prevent interference with or the invasion of the property rights of the debtor. It was broad enough in its terms to enjoin all persons from interfering with the property in custodia legis and was sufficient as a public record to impart constructive notice to all.

■ As we view the case, the question of the injunction is immaterial. The rule is applicable under a 77B proceeding that when the petition is approved by the court and it continues the officers of the corporation in possession of the property, it is in the custody of the court and it is not competent for any person to interfere with the possession of the corporate officers without first obtaining its consent. We consider this rule of such importance to the interest and safety of the public and the administration of justice that it should be inflexibly maintained on all occasions.

■ Its application imposes no undue hardship. In the present case appellants could have applied to the court to be heard on any just ground of complaint or for the establishment of any right they had in the premises. In re Swan, 150 U.S. 637, 652, 14 S.Ct. 225, 37 L.Ed. 1207; Thomas v. Cincinnati, N. O. & T. P. Railway Company, C.C., 62 F. 803. Under such circumstances, the rule is inapplicable that in order to charge a person with contempt for violating an injunctive order of the court, actual notice or knowledge of it must be brought home to the violator. This conclusion is based upon a familiar doctrine applicable to proceedings in bankruptcy courts. If this exception were not recognized, endless delays would be encountered to the great detriment of litigants and others interested in the expeditious administration of bankrupt estates.

■ The court was not compelled to observe the inhibitions of 29 U.S.C.A. § 107 and other related sections commonly known as the Norris-LaGuardia Anti-Injunction Act of March 23, 1932 (29 U.S.C.A. §§ 101–115). The right of the Bankruptcy Court is inherent to issue an injunction when necessary to prevent the defeat or impairment of its jurisdiction. Continental Illinois National Bank & Trust Company v. Chicago, Rock Island & Pacific Railway Company, 294 U.S. 648, 676, 55 S.Ct. 595, 79 L.Ed. 1110; Ex parte Baldwin, 291 U.S. 610, 615, 54 S.Ct. 551, 78 L.Ed. 1020.

The injunctive order here complained of had no relation to a labor dispute at the time of its entry. It was the usual one entered in bankruptcy cases under section 77B for the protection and preservation of the bankruptcy estate pending the proceedings. A review of the facts shows that the contempt charges did not grow out of a labor dispute, as defined under Section 13 of the Act (29 U.S.C.A. § 113, 47 Stat. 73).

Section 13(a) provides a case shall be held to involve or grow out of a labor dispute when it concerns persons engaged in the same industry, trade, craft or occupation; or having a direct or indirect interest therein; or having the same employer or the same employees or who are members of the same or an affiliated organization of employers or employees; whether such dispute is (1) one between one or more employers or associations of employers and between one or more employees or associations of employees; (2) between one or more employers or associations of employers and one or more employers or associations of employers; or (3) between one or more employees or associations of employees and one or more employees or associations of employees; or when the case involves any conflicting or competing interests in a labor dispute of persons participating or interested therein.

Subsection (b) provides that a person or association shall be held to participate or be interested in a labor dispute if relief is sought against him and if engaged in the same industry, trade, craft or occupation in which such dispute occurs or has a direct or indirect interest therein or is a member, officer, or agent of any association composed in whole or in part of employers or employees engaged in such industry, trade, craft or occupation.

Subsection (c) defines the term "labor dispute" to include any controversy concerning terms or conditions of employment or concerning the association or representations of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment regardless of whether or not the disputants stand in the proximate relation of employer and employee.

The facts found by the Special Master and concurred in by the court show that the Cleveland Truckers Association is a corporation organized under the laws of Ohio and the Pavers Exchange is also an Ohio non-profit corporation, and its members are paving contractors doing business in the County of Cuyahoga, Ohio; that the

International Union of Operating Engineers is an unincorporated labor organization and had three locals or subordinate bodies with their headquarters in the City of Cleveland, Ohio, and that the appellant, Frank P. Converse, is its international representative, and appellant, Bernard Hagesfeld, is the vice-president and business agent of the locals. The International Union of Pavers and Rammermen is an unincorporated labor organization and has a subordinate body at Cleveland, Ohio, associated with the International Union of Operating Engineers. Appellants, R. H. Phillips and Don Scott, are respectively president, business agent, secretary and assistant business agent of the local of the International Union of Pavers and Rammermen. At the time the debtor, who was not a member of the Pavers Exchange or the Truckers' Association, filed its petition for reorganization, it was constructing a highway in Cuyahoga County under contract with the State Highway Commission and shortly thereafter became a sub-contractor of the Howitz Company for the construction of a street in the City of Cleveland. It was also a bidder at a public letting for another section of the highway in Cuyahoga County.

Appellant, Frank P. Converse, instructed debtor's officers that they must not file a bid with the Highway Department on this letting as he intended that another contractor belonging to the Pavers Exchange should have the contract.

The Board of County Commissioners of Cuyahoga County also advertised for bids for the improvement of a highway in the County and appellant Converse instructed debtor's officers not to bid on this project. At the time the debtor filed its petition, appellant, Frank P. Converse, was the manager of a labor organization designated a "superintendents', foremen and timekeepers' union", a subsidiary of the International Union of Operating Engineers. Its members were composed of the superintendents, foremen and timekeepers of contractors, who were members of the Pavers Exchange.

Converse was also the manager of a labor organization first known as "local No. 313 of the International Hod-Carriers, Building and Common Laborers' Union of America," which afterwards surrendered its charter and reorganized as "Local No. 405 of the International Union of Pavers and Rammermen".

After the debtor's petition was filed and approved, appellant Converse insisted it must become a member of the Pavers Exchange, the constitution and by-laws of which provided that upon a majority vote of its members an assessment could be made of two percent of the gross sum each of its members received upon public contracts to be used for the payment of salaries, wages or other expenses to promote additional campaigns or for lobbying purposes. The record shows, however, this assessment was never made.

Regardless of the instructions of Converse, the debtor bid on the public construction contracts, refused to heed his request to join the Pavers Exchange and declined to employ superintendents, foremen and timekeepers of his union or to require its employees occupying those positions to join the union. Following this, appellants, acting jointly and severally, so interfered with the conduct of the debtor's business by placing pickets in large numbers about its equipment, thus preventing its employees from operating it, that its work was discontinued until the order of citation herein was issued.

A labor dispute, as used in the Norris-LaGuardia Act, comprehends "disputes growing out of labor relations and implies the existence of relation of employer and employee". United Electric Coal Companies v. Rice, 7 Cir., 80 F.2d 1. In the case at bar there was no real controversy between the debtor and its employees concerning terms or conditions of employment or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment. Stripped of excuses, appellants were by interference and coercion attempting to compel the debtor to become a member of a contractors' association in Cuyahoga County, Ohio, the primary purpose of which was to destroy competition in the highway construction business in that county. Wages and working conditions were incidental. The refusal of the debtor to accede to the unauthorized and unwarranted demands of appellants can be in no sense termed a labor dispute as defined in section 13(c) of the Norris-LaGuardia Act. Application of that Act to the case at bar would be a distortion of its purpose not intended by Congress. Scavenger Service Corporation v. Courtney, 7 Cir., 85 F.2d 825.

**132**

It is well-settled law that whoever unlawfully interferes with property in the possession of a court is guilty of contempt and it is equally settled that whoever unlawfully interferes with officers and agents of the court in the full and complete possession and management of property is guilty of contempt. It is of no consequence whether the interference results in actual violence or only in intimidation or threats. Ex parte Tyler, Petitioner, 149 U.S. 164, 191, 13 S.Ct. 785, 37 L.Ed. 689.

The evidence in the case is somewhat contradictory but is sufficient to support the lower court's finding that the contemptuous acts of appellant were established clearly and convincingly. Oriel v. Russell, 278 U.S. 358, 364, 49 S.Ct. 173, 73 L.Ed. 419; Telling et al. v. Bellows-Claude Neon Company et al., 6 Cir., 77 F.2d 584.

This is a civil contempt proceeding in furtherance of the objects of the original suit to effect a statutory reorganization of the debtor. It is a continuation of the original action and for the benefit of the complainant. The lower court properly assumed that the punishment meted out was remedial (Gompers v. Buck's Stove & Range Company, 221 U.S. 418, 444, 31 S.Ct. 492, 55 L.Ed. 797, 34 L.R.A.,N.S., 874), and since the proof lacks certainty as to the damages sustained by the appellee due to the wrongful acts of appellants, outside of the expenses of the proceedings, the lower court properly imposed a fine for that amount. Toledo Scale Company v. Computing Scale Company, 261 U.S. 399, 428, 43 S.Ct. 458, 67 L.Ed. 719. The appellants were not entitled to a jury trial. Marcus v. Pennsylvania Trust Company, 3 Cir., 23 F.2d 303; Odell v. Bausch & Lomb Optical Company, 7 Cir., 91 F.2d 359.

While the debtor was completing its sub-contract with the Howitz Company for the construction of a street in the City of Cleveland, it received a letter from the president of the International Hod Carriers Building and Common Laborers' Union of America, an affiliate of the American Federation of Labor, advising it that this organization had jurisdiction over its employment of common laborers. It had theretofore selected these employees from Local 405 of the International Union of Pavers and Rammermen. Shortly after the receipt of the letter, the business agents of the Hod Carriers' Union visited the project and requested that they be permitted to talk to the laborers while at work. The debtor's superintendent called the men together, rather than to interrupt each at his work, and the union representatives urged them to join Local 310. Thereafter the debtor selected only laborers who were members of Local 310.

Appellants contend that these facts show that the debtor violated Section 77B, subs. *l*, m, of the Bankruptcy Act which provides that no debtor or trustee shall deny or in any way question the right of employees to join the labor organization of their choice and no debtor or trustee shall interfere in any way with the organization of employees or use the estate's funds to maintain company unions or to induce or coerce employees to join or remain members of such unions and that no judge, debtor or trustee shall require any person seeking employment on the property under jurisdiction to sign any contract or agreement promising to join or to refuse to join a labor organization. From these facts, appellants insist that the debtor has been guilty of such inequitable conduct as to bar it from relief.

We find it unnecessary to decide whether there was a violation by the debtor of the statute in question. The purpose of contempt proceedings is to uphold the power of the court and secure to suitors therein the rights awarded. The exercise of the power is two-fold; (1) the proper punishment of guilty parties for their disrespect to the court or its orders and (2) to compel their performance of acts or duties required of them by the court. Bessette v. W. B. Conkey Co., 194 U.S. 324, 327, 24 S.Ct. 665, 48 L.Ed. 997. There is no showing in the record that the matters of which the appellants now complain were called to the attention of the lower court. The property in question was in its custody and the knowledge possessed by debtor's agent could not be imputed to the court.

Lawlessness, if any, on the part of debtor's employees would not give appellants the right to proclaim a suspension of the law and themselves proceed to violate it. The court should not further aggravate a lawless condition by ignoring it but should lend its aid to orderly procedure. Compare International News Service v. Associated Press, 248 U.S. 215, 245, 39 S.Ct. 68, 63 L.Ed. 211, 2 A.L.R. 293; Manufacturers' Finance Company v. McKey, 294 U.S. 442, 450, 55 S.Ct. 444, 79 L.Ed. 982;

Goodyear Tire & Rubber Company v. Overman Cushion Tire Company, 6 Cir., 95 F.2d 978.

In our opinion in no event does the case call for the application of the "clean hands" rule, because the punishment of the appellants for contempt involves in no way approval of any wrong doing on the part of the debtor. Trice v. Comstock, 8 Cir., 121 F. 620, 61 L.R.A. 176.

The decree of the District Court is affirmed.