In the Matter of Jeffrey A. SCHEWE and Cathy A. Schewe, Debtors.

Jeffrey A. SCHEWE and Cathy A. Schewe, Plaintiffs,

v.

FAIRVIEW ESTATES, Don Daglow, Jr., Manager, Branch County Sheriff's Department, Clerk and Court Officers of the District Court for Branch County, Jointly and Severally, Defendants.

Bankruptcy No. GK 86–01228.
Adv. No. 88–0303.

United States Bankruptcy Court, W.D. Michigan.

Jan. 12, 1989.

Edward R. Barton, Allegan, Mich., for plaintiffs/debtors.

John D. Bradshaw, Walsh, Langeland, Walsh & Bradshaw, Kalamazoo, Mich., for defendants Fairview Estates and Don Daglow, Jr.

## MEMORANDUM OPINION

JAMES D. GREGG, Bankruptcy Judge.

### ISSUES

Several legal issues are considered in this opinion. The issues addressed are:

1. Does 11 U.S.C. § 362 prohibit the Defendants from seeking to dispossess the Plaintiffs of their tenancy, after confirmation of the Plaintiffs' Chapter 13 Plan, unless and until relief from the automatic stay is granted?

2. If the automatic stay applies, what is the effect of the stay?

3. If the automatic stay was violated, should the Defendants be held in contempt or the Plaintiffs be awarded damages?

4. Are Plaintiffs entitled to a preliminary injunction which prohibits the Defendants from seeking a writ of restitution to enforce the Defendants' previous judgment of possession in the state court?

5. If the automatic stay applies, are the Defendants entitled to relief from the automatic stay for cause? If so, should such relief be granted retroactively?

### FACTS

Cathy A. Schewe and Jeffrey A. Schewe, "Plaintiffs" or "Debtors", rent a mobile home lot from Defendant Fairview Estates; the manager of Fairview Estates is Defendant Don Daglow, Jr. Originally the Debtors and Fairview Estates entered into a written lease with a term of one year. The lease expired in accordance with its terms either shortly before or shortly after the Debtors filed their Chapter 13 petition. The Debtors decided not to enter into another written lease because they desired to terminate their tenancy on thirty days' notice in the event they were able to purchase a house. After expiration of the written lease, the Debtors rented the lot pursuant to an oral month-to-month lease as tenants at will.

On April 30, 1986, the Debtors filed for relief under Chapter 13 of the Bankruptcy Code.[1] The Debtors did not list Fairview Estates as a creditor in their Chapter 13 Statement because the Debtors were current on their rent obligations at the time the case was filed. Therefore, Fairview Estates did not receive any official notice of the bankruptcy case. The Debtors' Chapter 13 plan was confirmed on June 27, 1986 and the confirmation order was entered on July 1, 1986.

On or about May 20, 1988, Fairview Estates served a notice to quit upon the Debtors to terminate their tenancy. Although the Debtors were current in their rent obli-

---

1. The Bankruptcy Code, as amended, is set forth in 11 U.S.C. §§ 101–1330.

gations, Defendant Daglow served the notice because of the Debtors' failure to comply with certain mobile home park rules and regulations. The violations included noncompliance with storage regulations, numerous parking violations by the Debtors and their guests, excessive noise from the Debtors' use of the recreation room for a Boy Scout group, speeding on the streets of the mobile home park, and the Debtors' children playing in the streets. Since the service of the notice to quit, the Debtors have complied with all rules except for the storage regulation.

On June 24, 1988, Fairview Estates, by Mr. Daglow, filed a complaint for possession of the mobile home lot in the Third District Court for the State of Michigan. At the time the complaint was filed in the state court, Fairview Estates and Mr. Daglow had no official or actual knowledge of the Debtors' bankruptcy case. After filing of the complaint, Mr. Daglow was advised of the pendency of the case. Because the Defendants believed the automatic stay was inapplicable, and the state court judge apparently agreed, a judgment for possession regarding the mobile home lot was entered on July 1, 1988. That judgment provided a writ of restitution would issue on July 10, 1988 to evict the Debtors, and their mobile home, from the lot.

On July 7, 1988, the Debtors initiated this adversary proceeding by filing a verified complaint for injunctive relief. The Debtors requested a temporary restraining order to prohibit the Defendants from evicting them. After telephonic notice to Mr. Daglow, this court issued a temporary restraining order and scheduled a hearing on the preliminary injunction for July 15, 1988.

At the preliminary injunction hearing, the Defendants filed their answer, argued that the automatic stay was inapplicable, and informed the court they would also file a motion for relief from stay. After the court preliminarily opined the automatic stay might be applicable, the parties agreed the status quo should be maintained until such time the court's schedule permitted a full evidentiary hearing to address the facts and the legal issues. On July 20, 1988, an Order Restraining Defendants from Dispossessing Plaintiffs–Debtors from Possession of Real Property Pending Future Court Hearing was entered.

On August 4, 1988, the Defendants filed their Motion for Relief from Stay and a supporting legal memorandum. Subsequently the Debtors and the Defendants have filed additional legal memoranda. In accordance with the Pretrial Order dated August 30, 1988, this adversary proceeding and the motion for relief from stay were consolidated for trial, the above issues were framed and trial took place on October 7, 1988 in Kalamazoo, Michigan.

## DISCUSSION AND CONCLUSIONS

*Applicability of the Automatic Stay.*

■ The automatic stay is set forth in 11 U.S.C. § 362(a) as follows:

(a) Except as provided in subsection (b) of this section, a petition filed under § 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 USC 78eee(a)(3)), operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

Because all facts relate to postpetition activity, including entry of the state court judgment of possession, the court concludes that none of the automatic stay subsections are applicable with the possible exception of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The court has also considered the thirteen enumerated exceptions to the automatic stay set forth in 11 U.S.C. § 362(b). The only exception that might conceivably apply is "any act by a lessor to the debtor under a lease of nonresidential real property that has terminated by the expiration of the stated term of the lease before the commencement of or during a case under this title to obtain possession of such property." 11 U.S.C. § 362(b)(10). The court concludes this exception is inapplicable because the lease between the Debtors and Fairview Estates pertains to residential real property.

The Defendants argue that the stay imposed by Section 362(a)(3) is inapplicable because after confirmation of the Debtors' Chapter 13 plan all property revests in the Debtors and is no longer property of the estate. The Debtors argue that the estate survives confirmation of their plan.

Property of the estate is defined in 11 U.S.C. § 541(a) and, in Chapter 13 cases, 11 U.S.C. § 1306(a). After reviewing these statutory subsections, it appears that the only subsections which may apply are 11 U.S.C. § 541(a)(1), 11 U.S.C. § 541(a)(7) and 11 U.S.C. § 1306(a)(1).

Property of the estate is generally defined as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Also, "any interest in property that the estate acquires after the commencement of the case" is property of the estate.[2] 11 U.S.C. § 541(a)(7). Finally the possessory interest in the lot pursuant to the month-to-month lease might also be property of the estate if acquired "after the commencement of the case but before the case is closed, dismissed, or converted". 11 U.S.C. § 1306(a)(1). Regardless of when the one-year term lease expired and the month-to-month tenancy began, the debtors' possessory right to the mobile home lot was property of the estate *prior* to confirmation of their Chapter 13 plan.

■ Does the mobile home lot remain property of the estate after confirmation of the plan? Cases reported to date reach differing conclusions regarding this legal issue.

11 U.S.C. § 1327(b) states: "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." If vesting of property in the debtor terminates the bankruptcy estate, the automatic stay imposed by Section 362(a)(3) is likewise terminated. To the contrary, if the estate continues to exist the stay remains in effect.

This court has considered a number of Chapter 13 cases which hold the automatic stay does not apply postconfirmation. *Mason v. Williams (In re Mason)*, 51 B.R. 548 (D.Or.1985), involved a creditor that obtained a postconfirmation judgment and attempted to collect a debt by garnishing the

---

**2.** The record before the court is unclear as to exactly when the original lease of one year expired and when the tenancy at will commenced.

debtor's wages. The *Mason* court stated at 51 B.R. 550:

> While 11 U.S.C. § 1306, relied upon by the debtor, and 11 U.S.C. § 1327, relied upon by the bankruptcy court, may result in some conflict, that conflict can be resolved by concluding that the debtor's wages go into the estate pursuant to 11 U.S.C. § 1306 as long as the estate exists or until the case is "closed, dismissed or converted." But in accordance with 11 U.S.C. § 1327, the estate may cease to exist prior to the case being "closed, dismissed or converted" when the plan so provides and the plan is confirmed.

The court concluded that, as a result of confirmation, the estate ceased to exist and the automatic stay did not apply. Therefore, the creditor may exercise its rights against the debtor as if no bankruptcy case existed. 51 B.R. at 550.

*In re Adams*, 12 B.R. 540 (Bkrtcy.D. Utah 1981), is a case involving a nondischargeable alimony and support obligation. In *Adams*, the court states that property of the estate "is pruned dramatically at confirmation." 12 B.R. at 542. Pursuant to 11 U.S.C. § 1327(b), the court determined the property revested in the debtor at confirmation and any property which was not necessary for the consummation of the debtor's plan is not protected by the automatic stay. Because the ex-spouse's nondischargeable debt was not treated by debtor's plan, the ex-spouse had "the right to proceed against the wages of the debtor in the amount they exceed the payments to the trustee under the plan and may further proceed against any property claimed as exempt which is not being used to fund the plan, and any other property which has likewise been retained by the debtor and is not necessary to the execution of the plan as proposed." 12 B.R. at 543. *Accord, In re Johnson*, 36 B.R. 958 (Bkrtcy.D.Utah 1983) (postconfirmation actions to collect child support debts from tax refund held not to violate automatic stay); *See also LaSalle v. Endicott (In re Endicott)*, 79 B.R. 439 (Bkrtcy.W.D.Mo.1987) (upon confirmation the Chapter 13 estate ceases to exist and property of the estate is vested in the debtor.)

Another case involving alimony and child support obligations, *Bernstein v. Nagel (In re Bernstein)*, 20 B.R. 595 (Bkrtcy.M.D. Fla.1982), is consonant with the above cases. The court's comments in *Bernstein* give some insight to the other decisions regarding support obligations. *Bernstein* states at 20 B.R. 596:

> It is well to state at the outset that the area of domestic relations and controversies relating to same have traditionally been left to the states. *Santosky v. Kramer*, [455] U.S. [745], 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Thus, it is evident that the commencement and dissolution of marriages are strictly within the competency of the respective states and no federal legislation, regardless of how broad and how remedial, should interfere ordinarily with the divorce proceeding and the federal courts, including bankruptcy courts, should proceed with great caution in this area in order not to upset the delicate balance between the federal and state relationships. *In re Waller*, 494 F.2d 447 (6th Cir.1974); *In re Popovici v. Agler*, 280 U.S. 379, 50 S.Ct. 154, 74 L.Ed. 489 (1929).

*Cf. White v. White (In re White)*, 851 F.2d 170 (6th Cir.1988) (automatic stay should be modified for the limited purpose of deferring to the traditional and expert judgment of state divorce court to decide interests in marital estate).

Reaching the same conclusion as *Adams*, *Bernstein* states at 20 B.R. 598:

> [O]nce a plan is confirmed, neither post-petition earnings nor post-petition acquisitions are any longer properties of the estate. From this it follows that these post-petition acquisitions are subject to the claim of a non-debtor spouse for the satisfaction of alimony and support obligations. Thus, while the automatic stay prohibits collection efforts by a non-debtor spouse from properties of the Debtor between the date of filing and the date of confirmation, this protection ceases after confirmation and the non-debtor spouse may proceed without any further interference from the Bankruptcy Court and subject "all properties" of

the Debtor and "all future earnings" of the Debtor with the exception of properties or earnings which are needed to fund the plan.

In each of the Chapter 13 cases cited above involving nondischargeable alimony or support obligations, the court concluded the automatic stay is not applicable postconfirmation because property of the estate vests in the debtor upon confirmation.

There exists a line of cases to the contrary. *In re Root*, 61 B.R. 984 (Bkrtcy.D. Colo.1986), disagrees with the conclusion that property of the estate ceases to exist upon confirmation of a Chapter 13 plan. At 61 B.R. at 985 that court states:

> If there is no existing estate upon confirmation, then what does the Chapter 13 Trustee administer? If there is no estate over which the Chapter 13 Trustee has control, then that Trustee is nothing more than an officious intermeddler. Even 11 U.S.C. § 704(9), (made applicable to Chapter 13 Trustees by 11 U.S.C. § 1302(b)(1)), provides that the Trustee shall "... make a final report and file a final account of the administration of the *estate* [emphasis added] with the court." There must be an "estate" upon and after confirmation, and that estate consists of the property and future earnings of the debtor dedicated to fulfillment of the Chapter 13 plan.

*Riddle v. Aneiro (In re Aneiro)*, 72 B.R. 424 (Bkrtcy.S.D.Cal.1987), is a Chapter 13 case which involved the assumption and purported modification of a nonresidential lease. The court determined that "upon confirmation there remains property of the estate which revests in the debtor encumbered by the order of confirmation." 72 B.R. at 430. The court in reaching its conclusion stated:

> The mere revesting of the property in the debtor upon Chapter 13 plan confirmation does not convert property of the estate into property of the debtor. Instead, the revested property remains property of the estate subject to the terms of the order of confirmation and all the protections of § 362(a). While the debtor may own and possess the proper-

ty of the estate, he is not free for all purposes to do with it as he pleases. Section 1322(a)(1) provides for "supervision and control" by the trustee over monies and property committed to the plan. In addition, under the provisions of a confirmed plan, the debtor may remain the disbursing agent for the revested property of the estate.

72 B.R. at 429.

*In re Clark*, 71 B.R. 747 (Bkrtcy.E.D.Pa. 1987), involved an instance when a creditor obtained a postconfirmation judgment against a Chapter 13 debtor respecting a postpetition debt. The creditor argued that Section 1327(b) revested all property in the debtor and thereby terminated the stay imposed by Section 362(a)(3) regarding property of the estate. After discussing the two interpretations of what happens to property of the estate after confirmation, and considering the tension between differing policy considerations, the court adopted the reasoning of the *Root* case. *Clark* therefore determined the automatic stay remains applicable after confirmation of a Chapter 13 plan. That court acknowledged that the "equities of the situation before us still appears to us to be largely with the Debtor." *Clark* also states the postpetition creditor "should have a *relatively slight burden* to overcome to obtain relief from the automatic stay prospectively." 71 B.R. at 750 (emphasis added).

*In re Boston Business Machines*, 87 B.R. 867 (Bkrtcy.E.D.Pa.1988), is a Chapter 11 case with facts somewhat analogous to those in this case. *Boston Business Machines* involved the rental of nonresidential real property pursuant to an oral lease, which appears from the facts of the case to have been a month-to-month tenancy. Prior to confirmation, the landlord instituted a proceeding in state court to recover possession of the property after the tenant fell into arrears on the rental payments. The state court judge and the landlord were first informed of the tenant's Chapter 11 bankruptcy filing at the time of the hearing to obtain possession. In the state court, a writ of possession was issued and the debtor was evicted. In *Boston Business Ma-*

*chines* the court adopted its previous decision of *In re Clark,* 69 B.R. 885 (Bkrtcy.E.D.Pa.1987), *modified,* 71 B.R. 747 (Bkrtcy.E.D.Pa.1987) and stated:

> the fact that the Debtor's actions which allegedly gave rise to Rudolph's cause of action in state court arose post-petition is immaterial to the impact of the stay. Rudolph was obviously attempting to obtain possession of property of the Debtor's estate in seeking to evict the Debtor from his long-time pre-petition tenancy. *See* 11 U.S.C. § 362(a)(3); *In re Whitt,* 79 B.R. 611, 614–15 (Bankr.E.D.Pa.1987); and *Clark, supra,* 69 B.R. at 890–91.
>
> We also note the presence of many cases supporting the principle that, even where a debtor-tenant has little or no right to continued possession of a premises, relief from the automatic stay is a precondition to the landlord's regaining possession of [same]. *See, e.g., In re Sudler,* 71 B.R. 780, 786 n. 1 (Bankr.E.D.Pa.1987); *In re Lewis,* 15 B.R. 643, 644–45 (Bankr.E.D.Pa.1981); and *In re GSVC Restaurant Corp.,* 3 B.R. 491, 494 (Bankr.S.D.N.Y.1980).

87 B.R. at 870.

Although other courts have reached different conclusions, this court believes the automatic stay applies in this case. This court recognizes the competing policy concerns of debtor protection and preserving property rights of creditors. Debtor rehabilitation is one major policy goal under the Bankruptcy Code. In Chapter 13 cases, the automatic stay allows a debtor the time to propose, confirm and *consummate* a confirmed plan involving property of the estate. If a creditor has cause to seek modification of the automatic stay, the creditor may file a motion for prompt determination by the court. The court is under strict time constraints to hear and decide motions to modify the automatic stay. 11 U.S.C. § 362(e).

The United States Supreme Court has recently stated "the 'interest in property' protected by § 362(d)(1) does not include a secured party's right to *immediate* foreclosure." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988) (emphasis added). When a Chapter 13 case has been confirmed and a debtor retains a possessory right in real property, absent exceptional circumstances, a secured party or lessor will incur very little harm during the short delay until the bankruptcy court hears a motion for relief from stay.

The majority of the cases which hold the automatic stay does not apply in Chapter 13 cases postconfirmation involve alimony, maintenance and support issues. Those types of obligations are nondischargeable in a Chapter 13 case. 11 U.S.C. § 1328(a)(2). Although the policy is not always articulated, this court believes some cases hold the stay is inapplicable because of a compelling public policy consideration; an ex-spouse, a minor child or other person who is entitled to support for his or her daily needs should be able to take prompt action against property in order to survive. The policy considerations existing in the alimony, maintenance and support cases are not present in this case.

When a debtor is a wage earner, the continued further occupancy of his residential premises may be essential to earning his income and carrying out the terms of the debtor's confirmed plan. *Butler v. Bellwest Management Corp. (In re Butler),* 14 B.R. 532, 534 (S.D.N.Y.1981). This may be true whether the lease is entered into prepetition or postpetition. If the residential property is not protected by the automatic stay, a creditor may, without prior bankruptcy court approval, seek to summarily evict a debtor. In this case the leased property is a mobile home lot; the Debtors might be substantially harmed if they are erroneously compelled to relocate their mobile home and their family without contested facts and legal issues being first considered by this bankruptcy court.

Respected bankruptcy commentary partially supports this court's analysis. 2 Collier on Bankruptcy ¶ 362.04 at 362–36 (15th Ed.1988) states:

> In any event certain contracts that are property of the estate may be said to vest the debtor with property rights of a

sort and their termination would have the effect of removing property from the proceeding in violation of section 362(a)(3). A common example would be a lease of real property. Clearly an attempted ouster of a lessee after commencement of the case would be stayed under section 362(a)(3), unless the lease is one of nonresidential real property that has terminated by expiration of its stated term, in which case the exception to the automatic stay set forth in section 362(b)(10) would apply.

"Good sense and the intent of Chapter 13 dictate that the debtor should be protected by the stay during the *full course* of the rehabilitation process." *Citicorp Homeowners, Inc. v. Willey (In re Willey)*, 24 B.R. 369, 373 (Bkrtcy.E.D.Mich.1982) (emphasis added).

Notwithstanding authority to the contrary, this court holds the automatic stay imposed by 11 U.S.C. § 362(a)(3) is applicable to a debtor's possessory interest in residential real property both prior to and subsequent to confirmation of a Chapter 13 plan.[3] Therefore, the Defendants have violated the automatic stay by instituting a summary proceeding in the state court which attempted to dispossess the Debtors from the leased mobile home lot.

*Effect of Violation of Automatic Stay.*

■ Actions taken in violation of the automatic stay are void. *Kalb v. Feuerstein*, 308 U.S. 433, 443, 60 S.Ct. 343, 348, 84 L.Ed. 370 (1940) ("Because that State court had been deprived of all jurisdiction or power to proceed with the foreclosure, the confirmation of the sale, the execution of the sheriff's deed, the writ of assistance, and the ejection of appellants from their property—to the extent based upon the court's actions—were all without authority of law."); *Potts v. Potts (In re Potts)*, 142 F.2d 883, 888 (6th Cir.1944), *cert. denied*, 324 U.S. 868, 65 S.Ct. 910, 89 L.Ed. 1423 (1945) (state court judgment after bankruptcy filing and imposition of stay void); *N.L.R.B. v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 940 (6th Cir.1986) ("If it was later determined that the proceeding was *not* excepted from the automatic stay, the entire NLRB proceeding would be void *ab initio* as an act taken in violation of the stay.") (emphasis as in text); *In re Smith*, 86 B.R. 92, 93 (W.D.Mich.1988); *In re Clark*, 69 B.R. 885, 889 (Bkrtcy.E.D.Pa. 1987), *modified*, 71 B.R. 747 (Bkrtcy.E.D. Pa.1987) (actions taken by a creditor in violation of the automatic stay, even if mistakenly sanctioned by a court, are void).

This court therefore holds that all actions taken by the Defendants affecting the Debtors in the state court, including the entry of the judgment of possession obtained on July 1, 1988, are void and without legal effect. Pursuant to this court's general equitable powers, the Defendants are hereby enjoined from taking any further action to enforce the void judgment. 11 U.S.C. § 105(a).

*Possible Sanctions for Violation of the Automatic Stay.*

Should the Defendants be held in contempt? Should the Debtors be awarded damages as a result of the violation of the automatic stay?

■ A bankruptcy court has the power to determine civil contempt and award appropriate damages arising therefrom. *Archer v. Macomb County Bank*, 853 F.2d 497, 499 (6th Cir.1988) (it "was proper for the bankruptcy court to conduct a hearing on damages immediately after having decided the contempt issue."); *Carter v. Van Buskirk (In re Carter)*, 691 F.2d 390 (8th Cir.1982); *Fidelity Mortgage Investors v.*

---

**3.** *In re Crawford*, 95 B.R. 491 (Bkrtcy.W.D.Mich. 1988) considered an arguably similar issue involving a land contract in a Chapter 11 case. Honorable Jo Ann C. Stevenson held that the automatic stay expires upon confirmation of the Chapter 11 plan because all property of the estate vests in the debtor upon confirmation. 11 U.S.C. § 1141(b). The decision in this case is distinguishable from *Crawford*. Chapter 11 contains no analogous section to 11 U.S.C. § 1306(a)(1) which defines property of the estate to include property the debtor acquires after commencement of the case but before the case is closed, dismissed, or converted. Also, it should be noted that *Crawford* is not inconsistent with *Boston Business Machines* discussed in the text above at pp. 944–45. That case involved the applicability of the automatic stay in a Chapter 11 case *before* confirmation of a plan.

*Camelia Builders, Inc. (In re Fidelity Mortgage Investors)*, 550 F.2d 47 (2d Cir. 1976), *cert. denied*, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977); *In re Reed*, 11 B.R. 258 (Bkrtcy.D.Utah 1981); *Edleman v. Grand Valley Nat'l Bank (In re Haines & Baker Excavating, Inc.)*, 25 B.R. 869 (Bkrtcy.W.D.Mich.1982); *Miller v. Mayer (In re Miller)*, 81 B.R. 669, 673 (Bkrtcy.M.D.Fla.1988) (bankruptcy court has inherent and statutory power to punish contempt; "call a spade a spade and admit that the violation of a permanent injunction issued by a court of competent jurisdiction is nothing else than what it is, i.e., contempt of court"); *Williams v. Clark (In re Clark)*, 91 B.R. 324, 333 (Bkrtcy.E.D.Pa.1988) (concludes that a bankruptcy court has the constitutional power to impose civil contempt); *contra, Plastiras v. Idell (In re Sequoia Auto Brokers, Ltd., Inc.)*, 827 F.2d 1281 (9th Cir.1987) (a bankruptcy court has neither inherent nor statutory authority to punish contempt; constitutional issue not decided).

■ The requisite elements to establish civil contempt are: (1) there must exist a specific and definite court order which has been violated and (2) the person who violated the order must have prior knowledge of it. *Fidelity Mortgage Investors*, 550 F.2d at 51; *In re Reed*, 11 B.R. at 268. To knowingly violate a court order, a person need not have *formal* or *official* notice of it; *actual* knowledge is sufficient. *Fidelity Mortgage Investors*, 550 F.2d at 52. Knowledge of the automatic stay may be inferred from knowledge of the bankruptcy filing and the circumstances relating to the bankruptcy. *In re Reed*, 11 B.R. at 275. Some cases mandate or imply that the elements of civil contempt must be proven by clear and convincing evidence. *Oriel v. Russell*, 278 U.S. 358, 364, 49 S.Ct. 173, 174, 73 L.Ed. 419 (1928); *Telling v. Bellows–Claude Neon Co.*, 77 F.2d 584, 585 (6th Cir.1935), *cert. denied*, 296 U.S. 594, 56 S.Ct. 108, 80 L.Ed. 420 (1935); *Converse v. Highway Const. Co. of Ohio, Inc.*, 107 F.2d 127, 132 (6th Cir.1939); *In re Reed*, 11 B.R. at 274, n. 26.

■ Appropriate sanctions arising from civil contempt violations include (1) an award of compensatory damages for actual losses incurred, (2) payment of attorneys' fees, (3) expungement of a creditor's claim, (4) imposition of an *in terrorem* fine when the government is the complainant and (5) payment of punitive damages. Developing appropriate sanctions in civil contempt proceedings may require creativity; any award granted should be consonant with the goal of full remedial relief. *See In re Reed*, 11 B.R. at 276–77 (and authorities cited therein).

■ With respect to damages awarded under the bankruptcy court's contempt powers, the damages cannot be speculative. Although we may not reverse the bankruptcy court's damage award merely because we might have reached a different result, *id*, "a damage award must not be based on 'mere speculation, guess, or conjecture.'" *John E. Green Plumbing & Heating Co. v. Turner Construction Co.*, 742 F.2d 965, 968 (6th Cir.1984), *cert denied* 471 U.S. 1102, 105 S.Ct. 2328, 85 L.Ed.2d 845 (1985), (*quoting Zirin Laboratories Int. v. Mead–Johnson & Co.*, 208 F.Supp. 633 (E.D.Mich.1962). And, while "[w]e recognize that 'the law does not require impossibilities when it comes to proof of damages, ... it does require whatever degree of certainty tha(t) the nature of the case admits.'" *Id (quoting Schankin v. Buskirk*, 354 Mich. 490, 497, 93 N.W.2d 293 (1958)).
*Archer v. Macomb County Bank*, 853 F.2d at 499.

■ In this proceeding the Defendants had no knowledge whatsoever of the bankruptcy case or the automatic stay until after the complaint for possession was filed in the state court on June 24, 1988. When the Defendants were informed of the bankruptcy case, they proceeded to obtain a judgment for possession on July 1, 1988. The Defendants believed that the automatic stay was inapplicable, relying upon certain cases cited above. Upon filing of the Debtors' adversary proceeding, on July 7, 1988, the Defendants immediately ceased all efforts to dispossess the Debtors of the

mobile home lot. Based upon the record before it, this court finds the Defendants did not knowingly violate the automatic stay. A finding of contempt is therefore not warranted. Even assuming arguendo that the Defendants knowingly violated the automatic stay during the short period from the time they received knowledge of the bankruptcy until the Defendants ceased their efforts to dispossess the Debtors, an award for damages is not justified. The Debtors failed to present any testimony regarding damages suffered. Any award of damages would be entirely speculative and impermissible.

In addition to possible sanctions pursuant to civil contempt, the Bankruptcy Code creates a separate statutory remedy when an entity violates the automatic stay. 11 U.S.C. § 362(h) states: "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." A bankruptcy court may impose sanctions upon an individual who willfully violates the automatic stay without a determination of civil contempt. *Budget Service Co. v. Better Homes of Virginia*, 804 F.2d 289, 293 (4th Cir.1986). A proceeding to enforce the stay or to recover damages from the violation thereof is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and (2). An "individual" as set forth in § 362(h) may include a corporate entity. *Budget Service Co. v. Better Homes of Virginia*, 804 F.2d at 292.

Based upon the record before the court, the Defendants have not willfully violated 11 U.S.C. § 362. "There should be little doubt that where the violation of the stay is inadvertent, contempt is not an appropriate remedy." 2 Collier on Bankruptcy, ¶ 362.11 at 362–73 (15th Ed.1988). Therefore, the Defendants are not liable for any actual damages, costs or attorneys' fees, or punitive damages. Even assuming the Defendants' acts in violation of the stay were willful, an award of damages would be speculative and inappropriate.

*Debtors' Complaint for Injunction.*

The Debtors' adversary proceeding seeks a preliminary injunction which will prevent the Defendants from seeking or obtaining a writ of restitution in state court to dispossess the Debtors from the mobile home lot. The factors to be considered in granting or denying a preliminary injunction are: "(1) the likelihood of plaintiff's success on the merits; (2) whether the injunction will save the plaintiff from irreparable injury; (3) whether the injunction would harm others; and (4) whether the public interest would be served by the injunction." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir.1985).

Based upon the evidence presented, the Debtors have not carried their burden to show that a preliminary, or final, injunction is necessary. The court has determined the automatic stay is applicable. That stay directly protects the estate's property and the Debtors' use of the property unless, and until, the stay is modified. It should also be noted that the parties agreed at the preliminary injunction hearing that the Defendants would not take any action to dispossess the Debtors until such time that this court decided the issues relating to the applicability of the automatic stay and, if necessary, whether the stay should be modified. An order was entered which preserved the status quo. Based upon this opinion, the Debtors' complaint for injunction is moot. Further, in the event the relief sought may not be moot, the request for an injunction is denied.

*Defendants' Motion for Relief from Stay.*

11 U.S.C. § 362(d) states:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

The Defendants assert that the automatic stay should be modified for cause pursuant to 11 U.S.C. § 362(d)(1). The Defendants argue "cause" exists because the Debtors possess the mobile home lot as tenants at will under Michigan law and the applicable state law permits the Defendants to terminate the tenancy and dispossess the Debtors with one month's notice.[4] The Defendants also assert that "cause" exists because of the Debtors' failure to abide by the park rules and regulations.

The Debtors argue that, notwithstanding Michigan law, the Defendants should not be permitted to terminate their month-to-month tenancy because they need to continue to possess the mobile home lot to consummate their confirmed plan. Implicitly, the Debtors assert that this court's equity powers permit it to "freeze" the tenancy at will and to prohibit the Defendants from terminating that tenancy. The Debtors further argue that the Defendants have not uniformly enforced park rules and regulations against all tenants; therefore, they aver they are being unfairly discriminated against in contravention of the Bankruptcy Code.

"Cause" to terminate or modify the automatic stay is not defined under the Bankruptcy Code except that it may include "lack of adequate protection." 11 U.S.C. § 362(d)(1); 11 U.S.C. § 361(1), (2) and (3). In previous bench opinions, given certain facts, this court has determined cause may include lack of insurance, commission of waste, failure to pay post-petition taxes respecting the property in which the credi-

tor has an interest, or the violation of government statutes or ordinances. Other bankruptcy courts have also addressed when sufficient "cause" may exist to modify or terminate the stay. *See In re Ashton*, 63 B.R. 244, 247 (Bkrtcy.D.N.D.1986) (" 'Cause' for relief from stay may include the element of bad faith on the part of a Chapter 13 plan proponent...."); *In re Future Growth Enterprises, Inc.*, 61 B.R. 469, 472 (Bkrtcy.E.D.Pa.1986) (" 'cause' for relief from the automatic stay is present when the lessor proves that the debtor is significantly in default under the lease,...."); *In re McMartin Indus., Inc.*, 62 B.R. 718, 723 (Bkrtcy.D.Neb.1986) (failure to pay state and federal taxes constitutes cause for granting relief from stay); *In re Lipply*, 56 B.R. 524, 527 (Bkrtcy.N.D. Ind.1986) (relief granted "where malfeasance by the debtor(s) has constituted an abuse of the bankruptcy process.") *In re CGR, Ltd.*, 56 B.R. 305, 306–07 (Bkrtcy.S. D.Tex.1985) (automatic stay terminated for cause where debtor failed to comply with court order); *Dollarwatchers, Inc. v. Rutter (In re Rutter)*, 25 B.R. 244, 246 (Bkrtcy.E.D.Mich.1982) (sufficient cause for modifying the stay exists where the administration of justice and the convenience of the parties is better served in the state court); *Schmidt Indus., Inc. v. Schreiber (In re Schreiber)*, 14 B.R. 1013, 1014 (Bkrtcy.S.D.Fla.1981) (failure to file plan and comply with requirements of Chapter 13 constitutes bad faith and is cause to lift the stay).

■ A bankruptcy court should not create additional property rights or remedies in favor of a debtor (or any other party in interest) where such rights do not exist

---

**4.** M.C.L.A. § 554.134 states:

All estates at will or by sufferance may be determined by either party by 1 month's notice given to the other party; and when the rent reserved in a lease is payable at periods of less than 3 months, the time of such notice shall be sufficient if it be equal to the interval between the times of payment and such notice shall not be held void by reason of its mentioning a day for the termination of the tenancy not corresponding to the conclusion or commencement of any such period, but in

any such case the notice shall be held to terminate the tenancy at the end of a period equal in time to that in which the rent is made payable. And in all cases of neglect or refusal to pay rent on a lease at will or otherwise, 7 days' notice to quit, given in writing by the landlord to the tenant, shall be sufficient to determine the lease. And in all cases of tenancy from year to year a notice to quit, given at any time, shall be sufficient to terminate said lease at the expiration of 1 year from the time of the service of such notice.

outside of bankruptcy law *unless* such rights and remedies are statutorily authorized under the Bankruptcy Code.

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interest should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy."

*Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). *See generally* Jackson, *The Logic and Limits of Bankruptcy Law,* at 21–27 (1986). "[I]n its role as a collective debt-collection device, bankruptcy law should not create rights. Instead, it should act to ensure that the rights that exist are vindicated to the extent possible." *Id.* at 22. *Cf. Kelly v. Robinson,* 479 U.S. 36, 47, 107 S.Ct. 353, 360, 93 L.Ed.2d 216 (1986) ("federal bankruptcy courts should not invalidate the results of state criminal proceedings"). "Bankruptcy law would be an odd place to generate new federal causes of action. Each time it does, strategic incentives are created to use the bankruptcy process for individual gain, even if it comes at the expense of the collective weal." Jackson, *supra* at 34.

Historically, a bankruptcy court is a court of equity. *Local Loan Co. v. Hunt,* 292 U.S. 234, 240, 54 S.Ct. 695, 697, 78 L.Ed. 1230 (1934) ("[C]ourts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity."); *Pepper v. Litton,* 308 U.S. 295, 304, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939); *Securities & Exch. Comm'n v. United States Realty & Improvement Co.,* 310 U.S. 434, 455, 60 S.Ct. 1044, 1053, 84 L.Ed. 1293 (1940); *Bank of Marin v. England,* 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966) ("There is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction."). However, a bankruptcy court does not have unfettered equity power to authorize it to make any decision which it deems to be "fair". *Norwest Bank Worthington v. Ahlers,* —— U.S. ——, ——, 108 S.Ct. 963, 968–69, 99 L.Ed.2d 169 (1988) ("[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."); *cf. In re Glenn,* 760 F.2d 1428, 1440–41 (6th Cir.1985), *cert. denied,* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985) (Section 105 should not be construed to allow a bankruptcy court to use its equitable powers to create rights which do not exist under state law; Section 105 was intended to affect parties' actions rather than undermine state statutes).

■ It is incontroverted that the Debtors' only possessory rights in the mobile home lot result from their status as tenants at will. Under the facts, because there exists no monetary default, pursuant to M.C.L.A. § 554.134, either the Debtors or the Defendants may terminate the tenancy by giving one month's notice to the other party. Absent the Debtors' Chapter 13 case, it is unquestioned that the Defendants would be permitted to serve a notice to quit and to undertake proceedings to obtain possession of the mobile home lot. This state law right is not vitiated by the bankruptcy filing except for the delay occasioned by the automatic stay. This court will not create new debtors' rights nor will it rely upon equity when such reliance is not warranted. The court will not impose a new lease agreement upon the parties. The court therefore holds that when a debtor-lessee and a lessor have entered into a tenancy at will relationship, and the landlord desires to terminate the tenancy under applicable state law, "cause" exists to modify the stay to permit the lessor to exercise its rights. Absent exceptional circumstances such as fraud, mistake, accident, or erroneous conduct, the court will not utilize its Section 105 equitable powers to permit a

debtor to remain in the premises. *Cf. In re Glenn,* 760 F.2d at 1442.

The Defendants also argue that cause exists to modify the automatic stay because the Debtors have failed to comply with park rules and regulations. The testimony shows the Debtors previously violated rules but have now substantially corrected their behavior. Because the court has already determined the stay should be modified for other cause, this issue need not be further considered. Also, the Debtors' allegations that the rules and regulations were unfairly applied by the Defendants likewise will not be addressed.[5]

*Possible Retroactive Relief from the Automatic Stay.*

Defendant Fairview Estates argues that the automatic stay should be modified retroactively. If this relief is granted, it will not be required to again serve a notice to quit upon the Debtors and to obtain another judgment of possession in the state court.

11 U.S.C. § 362(d) permits the court to grant relief from the stay by "annulling" the stay. If the stay was annulled, it would be deemed void and never effective; such an action would result in a retroactive modification of the stay. Retroactive relief from the automatic stay may be ordered by a bankruptcy court in appropriate limited circumstances. *In re Albany Partners, Ltd.,* 749 F.2d 670, 675 (11th Cir.1984) (Chapter 11 petition was not filed in good faith). Retroactive relief is only appropriate when a combination of factors justify the exercise of discretion to take such extraordinary action. *In re Boston Business Machines,* 87 B.R. at 871. The Debtors were in good faith when their plan was confirmed and continue to be in good faith. No abuse of the bankruptcy system or process is evident. In this proceeding, no extraordinary circumstances have been shown to justify annulment of the stay.

An order has been entered which comports with this opinion.

---

5. 11 U.S.C. § 525 prohibits discriminatory treatment against debtors in certain instances— when a governmental entity is involved or when an employer-employee relationship is present. The court notes that neither instance exists in this proceeding.